*401 OPINION OF THE COURT
John P. Lane, J.
In June 2001, petitioner Board of Education mailed letters to a number of temporary teachers indicating that their employment would continue in the 2001-2002 school year. According to respondent, these letters disqualified the recipients from unemployment insurance benefits during the summer recess. When classes opened on September 5, 2001, some of the temporary teachers who had received the letters had not been reappointed for the 2001-2002 school year. On November 1, 2001 respondent filed a grievance alleging that petitioner had incorrectly sent letters assuring temporary teachers employment in the 2001-2002 school year and seeking that the temporary teachers who had not been reappointed “be made whole with the loss of unemployment monies” (petitioner’s exhibit B). The grievance was denied on December 19, 2001, following which respondent demanded arbitration.
Initially, petitioner contends that the claim made by respondent, recovery for lost unemployment insurance benefits, is not a matter that is subject to arbitration. The court agrees. Determining whether there is a valid, enforceable agreement to arbitrate between a school district and its employees entails a two-step inquiry (Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.], 93 NY2d 132, 137). The court must first find that “there is nothing in statute, decisional law or public policy” which would preclude the parties from referring the dispute to arbitration (see Matter of Committee of Interns & Residents [Dinkins], 86 NY2d 478, 484). If there is some statute, decisional law or public policy that prohibits arbitration of the subject matter of the dispute, then the claim is not arbitrable under the Taylor Law (Civil Service Law art 14) even though the collective bargaining agreement provides otherwise (id.; Matter of Blackburne [Governor’s Off. of Empl. Relations], 87 NY2d 660, 665).
The entitlement of teachers to unemployment insurance benefits during the summer recess between two successive academic years or terms is governed by Labor Law § 590 (10). A teacher is not eligible for benefits during the summer recess if he or she has received reasonable assurance of continued employment for the upcoming academic year (id.). Whether a teacher received a reasonable assurance of employment is a factual issue to be resolved by the Unemployment Insurance Appeal Board (see Matter of Makis [Tompkins-Seneca-Tioga *402 Bd. of Coop. Educ. Servs.—Commissioner of Labor], 251 AD2d 928; Matter of Halperin [New York City Bd. of Educ.—Roberts], 122 AD2d 412). It is well recognized that courts regularly defer to the special competency of the Appeal Board in matters involving the interpretation of the Unemployment Insurance Law and its application to particular facts (see Matter of Gruber [New York City Dept. of Personnel—Sweeney], 89 NY2d 225, 231). It is significant to this case in which the grievance alleges that the letters assuring continuing employment issued by petitioner disqualified the temporary teachers from unemployment insurance benefits during the summer recess that courts have sustained determinations by the Appeal Board in favor of claimants who, like the aggrieved temporary teachers here, had received such letters in the absence of other evidence of their actual employment prospects (see Matter of Dixon [Buffalo Bd. of Educ.—Commissioner of Labor], 256 AD2d 1046; Matter of Sandick [New York City Bd. of Educ.—Hudacs], 197 AD2d 737; Halperin, supra).
The authority of the Appeal Board to decide finally all questions of fact affecting eligibility for unemployment insurance benefits (see Labor Law § 623 [1]) is inconsistent with the notion advanced by respondent that such an issue be submitted to arbitration outside the framework established in the Unemployment Insurance Law (Labor Law art 18). To allow an arbitrator to determine entitlement to damages in lieu of unemployment insurance benefits to teachers, who apparently did not apply for those benefits or seek relief from their failure to timely register for benefits (see Matter of Cardo [Hudacs], 190 AD2d 978), would amount to an impermissible interference with the legislative scheme for the funding and administration of unemployment insurance benefits in which the Appeal Board is the ultimate arbiter of fact (see Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO, 95 NY2d 273). Accordingly, arbitration of a grievance to require an employer to pay the equivalent of unemployment insurance benefits is precluded by the Unemployment Insurance Law, as well as by decisional law and public policy.
Even if that were not the case, petitioner still would be entitled to a permanent stay of the arbitration demanded. On the second step of the inquiry whether a grievance is a fit subject for arbitration under a public sector collective bargaining agreement (CBA), the court “should merely determine whether there is a reasonable relationship between the subject matter of the dispute and the general subject matter of the *403 CBA” (Matter of Board of Educ. [Watertown Educ. Assn.], 93 NY2d 132, 143, supra), and not whether the claim with respect to which arbitration is sought is tenable (id. at 142; CPLR 7501). Where there is no reasonable relationship between the general subject matter of the CBA and the subject matter of the dispute, “the issue, as a matter of law, is not arbitrable” (Watertown at 143; see also Matter of City of Schenectady [Schenectady Police Benevolent Assn.], 289 AD2d 814, 815).
The grievance in this case alleges a violation of articles XII, XXXVII and XXXIX (G) of the CBA. The CBA defines a grievance as “a complaint * * * of a violation, a misapplication or a misinterpretation of this Contract, or of Board personnel policies” (CBA art V [B] [1]). The general subject matter of the cited articles is, respectively, employment and termination of personnel, maintenance of benefits and the individual rights of full citizenship of all teachers. Respondent also points to the grievance procedure article of the CBA as authority for the claim for lost unemployment insurance benefits on behalf of the temporary teachers who were not reappointed. Article V (E) (1) provides, in pertinent part, “If the teacher shall have been found to have been improperly deprived of any professional advantage, the same shall be restored to the teacher or its equivalent in money shall be paid to the teacher.” A claim for unemployment insurance benefits can hardly be characterized as a professional advantage. As none of the other cited provisions of the CBA relate to continuing employment of temporary teachers or loss of unemployment insurance benefits, it cannot be said that the parties agreed to submit this grievance to arbitration (see Matter of Barnes [Council 82, AFSCME], 94 NY2d 719, 723; cf. Matter of Marinelli [Keller], 269 AD2d 750).
Among the other defenses and objections to arbitration petitioner raises are the timeliness of the grievance, respondent’s standing to represent the alleged aggrieved temporary teachers and the manner in which the demand for arbitration was served, all of which are arbitrable and are now moot. The petition is granted, and judgment shall be entered permanently staying the arbitration demanded by respondent.